UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
*Electronically filed*

| | |
|---|---|
| CLINTON BURTON, et al. ) | CIVIL ACTION NO. 2:10-CV-227-WOB |
| Plaintiffs ) | |
| v. ) | |
| ZWICKER & ASSOCIATES, P.S.C. ) | |
| Defendant ) | |

### AFFIDAVIT OF CLINTON BURTON

Comes now the Affiant, Clinton Burton, and after having been duly cautioned and sworn, states as follows:

1. I was employed by Zwicker & Associates at their Hebron, Kentucky offices in their Collection Department from April 2007 until May 2010. I was a Collection Manager from May 2007 until May 2010 reporting to Jamie Walker and Carlo Erna; both were Directors of Operations at the same location.

2. Prior to joining Zwicker, I had established a good career working in collections and customer service for various large companies. I had received many awards and accolades for my performance both before and after Zwicker. As a manager for these various companies, I was always recognized by upper management and my peers for being able to motivate and develop strong high end performance driven teams.

1

3. While working for Zwicker & Associates, I felt upper management and various peers were abusive to African American employees. They consistently made racial comments, terminated and spoke down to the African American population. Meanwhile, the Caucasian managers were allowed to get away with illegal activities with no disciplinary action.

4. Upper Management also never addressed or simply turned a blind eye to the many complaints regarding discrimination, sexual harassment, and just illegal activity. In fact, they often retaliated and came after the person for reporting such activities. The company should always protect people reporting such activities. In November 2008, I reported to Human Resources an incident between Patti Abbott and Paul Schlicker. Patti and Paul both stated they were horsing around, and after talking with both I gave them both warnings, separated them and sent the information to HR. I was then brought into the office and threatened with job loss. Paul Schlicker had a previous sexual harassment incident sealed in his file that was not told to me prior to him coming to my team. A big investigation was conducted and when I came back from vacation, Kim Weseman, Mike Koziol and other members of upper management said I handled the situation wrong and began ridiculing me. Comments were made from this moment on from upper management regarding my judgment.

5. Sometime between December and February 2009 I fielded several complaints from associates on Carlo Erna's team stating he was showing favoritism to a particular female employee. Mr. Erna and I had become good friends and I knew he was married having an affair with Bridget McIntyre. After multiple complaints from employees on his team and threats to protect the firm's liability, I then reported to Human Resources Director Kim Weseman a very detailed account of Manager Carlo Erna having an affair with someone he was managing, Bridget McIntyre.

2

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER                                                                                                   Plaintiff 997

6. After reporting I became subject to threats of job loss from Michael Koziol (VP of Collections Operations) on multiple occasions, and Carlo Erna was promoted to Director of Operations. Since my performance was outstanding, I felt I was passed over for the position because I reported the activity and because I was African American.

7. On April 9th, 2009 after working late on performance reviews at home, Zwicker sent me for a random drug screen. None of my Caucasian peers had been sent for a random drug screen and I had heard from Kim Weseman and various management co-workers they were trying to fire me. They suspended me subsequently pending the outcome of the results. My professional image and credibility was damaged. I received over 40 phone calls and texts from peers and members of my team asking what was going on with the situation. The drug screen results came back clean and I then reported to Kim Weseman (Director of Human Resources) that I was being retaliated against and singled out because I was African American. I requested a meeting with upper management before I came back to work. During the meeting with Jamie Walker and Mike Koziol (by phone) I reported and complained that I was being retaliated against for reporting and that I was being singled out because I was African American. I requested something be placed in my file regarding the clean screen and the incident. They declined my request. This was odd since amongst our peer group there were various managers that smelled of drugs and alcohol.

8. Paul LaGrone, a white male manager, was known to have smelled of alcohol while at work and he was promoted to Senior Collection Manager. Carl McMillan, a white male manager, had multiple instances where he was intoxicated at work. He actually had an altercation with an employee at work while intoxicated. The employee filed a complaint and

3

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER                                                                                                      Plaintiff 998

upper management did not immediately discipline or terminate Carl McMillan concerning the incident.

9. In May 2009 I received a less than stellar performance review and disagreed with various sections and comments on the review. Jamie Walker, a white female, and Mike Koziol, a white male V.P., were present and I was again threatened with job loss. However, this time Mike Koziol stood over top me cursing and yelling at me. He stated, "You f*ckin think you're doing this all by yourself? You're not as good as you think you are buddy!! You need to get off your high horse and you're lucky I have to get on this Bank of America call. Go back to work re-think what you said and we will pick this up when I get finished!" This was despite outperforming my Caucasian peers on a regular basis and receiving accolades from the VP of the portfolio I was managing.

10. From September to November, 2009 there were three major incidents that happened. First, Jennifer Holder and Jessica Bradford told me that Kim Weseman had released my personal information to them regarding my child support obligation. Jennifer Holder, Jessica Bradford and Danielle Johnson were discriminated against and thus sued the company (all had been top performers at one time). The attorneys for Zwicker called me in multiple times badgering, asking harassing questions regarding the character of the women that had sued, including whether I had, in fact, slept with them. I told the truth, denied I slept with any of them, but was later told that upper management felt I lied. Secondly, I received a note from Rhonda Collins regarding Sharon Hopkins and her supposed "sugar daddy" on the GE management team. Rhonda said she found the note in the bathroom. I also had received several complaints from representatives stating that Sharon Hopkins was being harassed by a manager. I went into the office and reported what I heard and gave Jamie Walker the note. I asked her to call Mike

4

Koziol and inform him, and to investigate the information and get back to me so I could be prepared. She never called Mike Koziol and also never investigated the incident. Sharon Hopkins later filed a sexual harassment lawsuit against Zwicker & Associates. Zwicker denied any liability.

11. There were many racial jokes and comments while at Zwicker & Associates. They were made by my management, co-workers, and multiple members of upper management. All of these were made on the open floor in front of people. They included but are not limited to:

   a. Paul LaGrone stated he drove past my house and he saw a bathtub in the lawn and saw a rent to own truck out front of my house, and that I was "bringing down the neighborhood property value." He presented this as a joke, at my expense, of course.

   b. He also stated to me one day I left my belt at home and my pants were sagging, "Why do you black people wear their pants like that? It looks like your standing on the corner selling drugs!"

   c. Carlo Erna and Kim Weseman constantly made racial statements and racial jokes like, "Don't worry no one will find out all of you guys look alike!"

   d. Sharon Martin making the statement that she is tired of these "Black Guys coming from across the river!" and asking me to help her smooth the incident and situation out.

12. December 2009 I reported to Carlo Erna the uneven workload shared on my portfolio. I also reported the incompetent behavior of my co-managers. Many of my team members complained that Bob Oldham, white manager, and Ted Weiner, white manager, were

5

not only unavailable, but could not perform the duties as assigned. My team members complained about Bob Oldham and Ted Weiner's lack of assistance and knowledge as relates to our core management duties. Carlo never addressed the issue or offered additional training to the managers. I also reported to Carlo Erna and Kim Weseman and Sharon Hopkins about the treatment of African American employees. D'Neece Turney (African American) stated she felt her Caucasian managers were not helping her. Nigel Johnson (African American) and Delorean Chancellor (African American) felt management had singled them out and treated them unfairly, but that the white employees were allowed to carry out the same behavior with no disciplinary action.

13. Bob Oldham was eventually terminated for sexual harassment and we only had two managers on the portfolio, and the pressure and workload was becoming increasing difficult. I reported to Carlo that assistance was needed immediately to even out the workload. He never addressed the issue or did anything to correct the issue. I sent an email to Carlo Erna with a copy to Jamie Walker titled "Concerns" (see email), requesting a meeting to address some topics. Neither Carlo nor anyone from upper management responded to my email. This was common.

14. January 2010 Gretta Hoffman (HR Generalist) approached me out on the collection floor and told me upper management intentions to fire me. Gretta obtained this information from upper management and Sharon Martin. Sharon Martin told Gretta they intended to fire me or let me hang myself. Gretta gave me her number and we then had detailed conversation on how they felt I lied in my deposition and they were retaliating. Many of my peers, including but not limited to Teresa Robinson, Gretta Hoffman, Jack Wehr, Jason Jameson, Jennifer Holder, Jessica Bradford and many others, knew of upper management's intentions to fire me.

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER                                                                                          Plaintiff 1001

15. Teresa Robinson, Jack Wehr and myself stayed late to achieve all our performance metrics on a regular basis. We had no one to help us and could not disclose anything to upper management without fear of retaliation.

16. On May 25th, 2011, the team and I were discussing an employee who had incident from the previous evening. A mouse/rodent ran across her foot. She had a panic attack and stood up on a desk. My team and I began to talk about how someone would feel about a rodent running across their foot. I got up on a desk and stated "We are all being attacked by rodents!!" At no time did we discuss the person or who it was. Lauren Davis an employee sitting across the room was watching and assumed that I was making fun of the other employee and began to speak loudly. I went over to her on three separate occasions and explained very calmly we were not talking about her friend and that we were simply making fun of the rodents. I also explained it was a particularly slow night and it was the end of the shift. That night happened to be a frustrating evening for collecting money and for the last 3-6 minutes we were chatting. The mood was more relaxed at night and many of my Caucasian peers did similar things, talking, joking and lightening the mood after a frustrating night was and is common place in the call center.

17. May 26th, 2011, I was called into the office and terminated, supposedly for "making fun" of an employee with a known phobia. There had never been an email or any information circulated regarding the alleged employee having a phobia of any sort.

18. There were many instances where horse playing and joking was allowed by Caucasian managers and by upper management at Zwicker and Associates that did result in disciplinary action or termination.

7

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER

Plaintiff 1002

a. Jeremy Turner, Jeremy Wartman, and Mark Jacobs were tossing football around 10 pm on the call center floor. A representative complained and they were called in the office and yelled at by Mike Koziol. The three Caucasian managers were not terminated for horse playing.

b. Carlo Erna and Jay Zaninni were making fun of Tom Cecil by hanging the marvel comic "Flash" emblem all over his desk and they both climbed up on a desk to hang it from the Bank of America sign. They did this because Tom made an error in a meeting. Neither one of them were ever terminated or disciplined.

c. Carlo Erna (Director of Operations) wrote an obscene email from Jeremy Turner's (Manager) desk using his email because he left his desk unattended. The obscene email was a joke sent to another member of upper management. Two weeks later Jeremy Turner used my computer (while I went to the bathroom) and sent an obscene email to Carlo Erna as a joke. Carlo called me in the office and asked me about the email. I was very upset that a member of management sent an unprofessional email from my desk. I reported the issue to Carlo Erna and wanted the person responsible reprimanded. Carlo did nothing about the incident.

d. Lee Craig (Manager) and Carlo Erna (Director) were leaving about 10:54 early one night so they didn't have to lock up. I predominantly locked up since I lived around the corner. Lee and Carlo were trying to sneak out and as a joke I said, "Where you guys going? They ran out and thought it was a joke!

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER

Plaintiff 1003

19. In August-September 2010 I was working with Jim Finocchiaro (President of SC Riverside) a receivables management company for a possible job/placement. He stated they were very interested in bringing me aboard. Jim then turned around and stated we could not go forward as someone from Zwicker had informed them I had been terminated for cause. This caused me not to be considered for the position. (See email attachments)

20. April 2011- September 2011, there were depositions and Laura Studen would not let me talk and get a word out. She continuously kept cutting me off and re-directing me. Also, I did not discuss or was able to talk about all the illegal activities that Zwicker & Associates made me endure. Discrimination, disclosure of my personal information, threat of job loss, retaliation and wrongful termination. Lastly, I did not get to talk about the inconsistent policies that were a staple at Zwicker & Associates.

21. The Managers were not provided any training at any time during my tenure at Zwicker & Associates. There were no tools put in place to help a manager who was struggling in a certain area or for one who wanted to better themselves and move up in the company. It is the responsibility of the company to provide tools and additional training. If a member of upper management is going to reprimand you for a certain topic, then certainly training and tools should always be provided.

22. Lastly, it is the responsibility of every company to have consistent policies free from favoritism. Here are some examples of inconsistent policies that were at Zwicker & Associates.

    a. Zwicker had a dress code and it was not consistent. Bridget McIntyre wore flip flops and Kim Weseman wore Affliction t-shirts. Both were prohibited and neither one ever received any disciplinary action or were sent home.

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER     Plaintiff 1004

Teresa Robinson and I wore jeans with rips and were sent home and or reprimanded.

b. I was sent for a drug test for "alleged" marijuana smell. Meanwhile, Carl McMillan was intoxicated at work multiple times and the reps knew of his intoxication. He was not sent for a drug test. This created an inconsistent policy.

c. Jack Wehr and Michelle Langdon both had unauthorized meeting at work (according to Zwicker). They were both terminated for the exact same offense. Michelle received unemployment benefits and the other they denied and contested their unemployment. This created an inconsistent policy.

d. Delorean Chancellor was terminated for using foul language on the collection floor. Meanwhile, Rich DeSouza (VP of Collections), Jamie Walker (Director of Operations), Carlo Erna (Director of Operations), Mike Koziol (VP of Collections), Jay Zaninni (Director of Operations) John Twite (CEO), Sharon Martin (Director of HR) and Kim Weseman (Former Director of HR) all openly used and continue to use profanity on the collection floor.

Further Affiant sayeth naught.

_____
CLINTON BURTON

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER          Plaintiff 1005

**STATE OF KENTUCKY**

**COUNTY OF KENTON**

Subscribed and sworn to by Clinton Burton before me, a Notary Public, on this the 29th day of November, 2011.

*Theresa M Mohan*

NOTARY PUBLIC, STATE AT LARGE
Notary ID: 434108

My Commission Expires:

Oct 28, 2015

11

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER

Plaintiff 1006