**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 2010-227 (WOB-JGW)

CLINTON BURTON                                        PLAINTIFF

VS.                    <u>MEMORANDUM OPINION & ORDER</u>

ZWICKER AND ASSOCIATES, PSC                           DEFENDANT


     This matter is before the Court on plaintiff's motion for
reinstatement and interim front pay (Doc. #292), defendant's
motion for judgment as a matter of law (Doc. #316), defendant's
motion for new trial and remittitur (Doc. #317), defendant's
motion for relief from judgment pursuant to Fed. R. Civ. P.
60(b)(3) (Doc. #348), and plaintiff's motion to strike
defendant's reply brief (Doc. #370).

     The Court heard telephonic oral argument on these motions
on Thursday, September 26, 2013. Barbara D. Bonar, Theresa M.
Mohan, and Randolph Freking represented the plaintiff.  Laura R.
Studen, Susan E. Stenger, Lawrence P. Murray, and Michael V.
Samarel represented the defendant.  Official court reporter Joan
Averdick recorded the proceedings.

     Having reviewed the written filings and heard from the
parties, the Court hereby issues the following Memorandum
Opinion and Order.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

This matter was tried to a jury beginning on April 22, 2013.  At the outset of trial, Plaintiff Clinton Burton ("Burton") was asserting claims of race discrimination, racially hostile work environment, and retaliation pursuant to the Kentucky Civil Rights Act ("KCRA"), KRS § 344, et seq., as well as common law claims for termination in violation of public policy, negligent supervision/negligent retention, intentional infliction of emotional distress, and invasion of privacy.  *See* Doc. 1-1.

At the close of all the evidence, Defendant Zwicker & Associates, P.S.C. ("Zwicker") made a motion for a directed verdict on all of Burton's claims.[1]  *See* Doc. 287.  The Court granted Zwicker's motion as it pertained to Burton's claims for negligent supervision/negligent retention, intentional infliction of emotional distress, and invasion of privacy.  *See* Doc. 290.  The Court denied Zwicker's motion as it pertained to Burton's claims of race discrimination, racially hostile work environment, and retaliation pursuant to KRS § 344, as well as Burton's common law claim asserting a public policy tort violation.  *Id*.

Regarding his claim for termination in violation of public policy, Burton asserted that Zwicker terminated him because

---

[1] Zwicker also filed a motion for a directed verdict at the close of Burton's evidence.  *See* Doc. 280.

Burton refused to perjure himself in a sexual harassment lawsuit filed by one of Burton's co-workers against Zwicker. Ultimately, each of Burton's KCRA claims and his claim for a public policy tort violation were submitted to the jury.

The jury unanimously returned a verdict in favor of Burton on all counts. *See* Doc. 336 at 88-92. The jury awarded Burton $300,000 in back pay for his lost wages. *Id*. at 90. Additionally, Burton was awarded $50,000 for emotional distress resulting from his wrongful termination and $50,000 in emotional damages resulting from the hostile work environment at Zwicker. *Id*. Lastly, the jury awarded Burton $600,000 in punitive damages for his termination in violation of public policy. *Id*. at 90-91. Judgment was entered in Burton's favor in the amount of $1,000,000. *See* Doc. 287.

After trial, Burton filed a motion for reinstatement and interim front pay. *See* Doc. 292. At trial, the Court specifically found that there was no evidence to justify an instruction to the jury on the issue of front pay. *See* Doc. 302 at p. 51. In response, counsel for Burton requested that the Court order reinstatement if the jury found violations of the pertinent sections of the KCRA. *Id*. at 51-52.

Additionally, Zwicker has filed a motion for judgment as a matter of law, a motion for remittitur and new trial, and a

3

motion for relief from judgment under Rule 60(b)(3).  *See* Docs. 316, 317, 348.

In its motion for judgment as a matter of law, Zwicker asserts that Burton failed to present sufficient evidence on his claims for racial discrimination, racially hostile work environment, and retaliation.  *See* Doc. 346 at pp. 2-23. Further, Zwicker asserts that Burton failed to satisfy his burden of proof as it related to his public policy tort claim. *Id.* at p. 27.  On that point, Zwicker argues that there is no evidence that Burton was requested to commit perjury or that he was terminated for refusing to do so.  *Id.* at pp. 27-33. Lastly, Zwicker asserts that Burton failed to present sufficient evidence to justify the jury's awards for back pay and punitive damages.  *Id.* at pp. 23-27, 33-36.

In its motion for remittitur and new trial, Zwicker again attacks the sufficiency of Burton's evidence as it pertains to Burton's claims for racial discrimination, racially hostile work environment, and retaliation.  *See* Doc. 347 at pp. 19-31.  Also, Zwicker once again attacks Burton's public policy tort violation asserting that there is insufficient evidence that Burton was requested to commit perjury or that he was terminated for refusing to do so.  *Id.* at pp. 31-33.

Moreover, Zwicker asserts that it was unfairly prejudiced in several respects such that it should be entitled to a new

4

trial. *Id.* at pp. 33-40.  Further, as it relates to its motion for remittitur, Zwicker argues that each of Burton's damage awards is excessive and/or unsupported by the evidence. *Id.* at pp. 2-10.

Further, after trial, Zwicker filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3).  *See* Doc. 348.  In this motion, Zwicker requests relief from the portion of Burton's judgment that relates to Zwicker's liability for violating public policy and Burton's award of punitive damages for that violation.  *Id.* at p. 1.

More specifically, Zwicker moves this Court to dismiss Burton's public policy tort claim and the punitive damage award because Burton committed a fraud on this Court by falsely testifying that he had been pressured to commit perjury.  *Id.* at p. 8.  Zwicker supports this motion with three affidavits from the outside counsel who interviewed Burton in the prior lawsuit and who deny that Burton ever gave unfavorable statements about Zwicker in the interviews.  *Id.* at pp. 4-6.

## II. __ANALYSIS__

### A. Burton's Motion for Reinstatement and Interim Front Pay

At trial, the Court specifically found that there was no evidence to justify an instruction on front pay.  *See* Doc. 302 at p. 51.  In response, counsel for Burton requested that the

Court order reinstatement if the jury found violations of the pertinent sections of the KCRA.  *Id.* at 51-52.

"A plaintiff who seeks an award of front pay must provide the district court with the essential data necessary to calculate a reasonably certain front pay award."  *Arban v. W. Pub. Corp.*, 345 F.3d 390, 407 (6th Cir. 2003) (quoting *Bruso v. United Airlines, Inc.,* 239 F.3d 848, 862 (7th Cir. 2001)); *see also Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 402 (5th Cir. 2002) (affirming district court's denial of front pay where an award would be "purely speculative").

"[A]wards of front pay must be guided by consideration of certain factors, including[:] an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages[,] and other factors that are pertinent on prospective damage awards."  *Roush v. KFC Nat. Mgmt. Co.*, 10 F.3d 392, 399 (6th Cir. 1993) (citation and internal quotation omitted).

Here, Burton admits that he offered no evidence as to what he earned at the jobs he took after his termination from Zwicker.  Additionally, a review of the record reveals an absence of a number of the above-referenced considerations that guide an award of front pay.  Without such evidence, the Court

6

would have been asking the jury to award front pay on a purely speculative basis. Thus, the Court properly denied Burton's request for an instruction on the issuance of front pay.

After trial, Burton filed a motion requesting the Court to order him to be reinstated to Zwicker's employ. *See* Doc. 292. In response, Zwicker asserts that Burton is foreclosed from requesting reinstatement because at trial he elected to pursue front pay. *See* Doc. 309 at pp. 1-2.

It is true that "the remedies of reinstatement and front pay are alternative, rather than cumulative." *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1234 (6th Cir. 1996). However, Zwicker has cited no case law which establishes that a plaintiff's request for a front pay instruction at trial prohibits the plaintiff from requesting reinstatement if the Court finds that the plaintiff has submitted insufficient evidence to justify a front pay instruction. These remedies are alternative rather than cumulative because their purpose is to make the plaintiff whole rather than to provide a windfall. *Id*.

In fact, "Courts generally award front pay when reinstatement is inappropriate or infeasible." *Id*. (citing *Schwarz v. Gregori*, 45 F.3d 1017, 1022 (6th Cir. 1995)). Thus, if a plaintiff elects to be reinstated and the Court finds it inappropriate, the plaintiff is not then foreclosed from seeking front pay as an alternative remedy.

7

The same is true for the reverse, especially in this situation where Burton specifically reserved the right to seek reinstatement when advised by the Court that he had not submitted sufficient evidence to justify an instruction on front pay. *See* Doc. 302 at pp. 51-52; *see also Selgas v. Am. Airlines, Inc.*, 104 F.3d 9, 13 n. 2 (1st Cir. 1997) (finding that submission of a front pay determination to a jury does not constitute an election of front pay over reinstatement as a remedy); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 796 (3d Cir. 1984) (stating that front pay was not waived where plaintiff specifically prayed for front pay and did not specifically disavow desire for reinstatement).

Burton asserts that he should be granted reinstatement because the Sixth Circuit has held that reinstatement is the presumptively favored equitable remedy. *See Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir. 1988); *Henry v. Lennox Indus.,* 768 F.2d 746, 752-53 (6th Cir. 1985). "However, while reinstatement should be granted in the ordinary case, [ ] it is an equitable remedy which is not appropriate in every case, such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." *Roush*, 10 F.3d at 398 (citations omitted).

8

Thus, the Court's denial of a front pay instruction does not require the Court to order that Burton be reinstated to Zwicker's employ.  *See Arban*, 345 F.3d at 406 ("The fact that reinstatement is inappropriate, however, does not mean that an award of front pay is required.")

Here, Burton testified that, "almost all the members of management showed some type of racial animus or harbored ill feelings toward me."  *See* Doc. 337 at p. 163.  Thus, it would undoubtedly be difficult for Zwicker to find a position within its firm that would not involve the same hostility and possibility of ongoing conflict.  Moreover, Burton testified that he is currently employed as a collections supervisor with a different firm.  *Id*. at p. 127.

Thus, while reinstatement may be the favored equitable remedy, the factors the Court should consider when determining if reinstatement is appropriate militate against granting such relief here.  While denying Burton both equitable remedies may seem to create a harsh result, this situation could easily have been remedied had plaintiff submitted evidence at trial upon which a jury could have calculated a reasonably certain front pay award.  *See Arban*, 345 F.3d at 407.

Therefore, Burton's motion for reinstatement and interim front pay is denied.

9

### B. Zwicker's Motion for Judgment as a Matter of Law

"[J]udgment as a matter of law will be proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue, or where a claim or defense cannot under the controlling law be maintained or defeated without a favorable finding on that issue." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 258 (6th Cir. 2000) (citing Fed. R. Civ. P. 50(a)). "The court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences." *Id*. (citations omitted).

### 1. Burton's KCRA Claims

Zwicker challenges the sufficiency of the evidence Burton presented on his claims for racial discrimination, racially hostile work environment, and retaliation. *See* Doc. 346 at pp. 2-23. Despite the detail and vigor Zwicker presents in its arguments, the arguments presented in these motions merely repeat those made on summary judgment and in its motions for directed verdict.

Upon a thorough review of the record, and drawing all reasonable inferences in favor of Burton, this Court cannot find that there "is no legally sufficient evidentiary basis for a

10

reasonable jury to find" in favor of Burton on his KCRA claims. *See Vance*, 231 F.3d at 258.

Accordingly, Zwicker's motion for judgment as a matter of law on Burton's KCRA claims is denied.

### 2. Burton's Public Policy Tort Claim

At trial, the Court submitted the following special verdict to the jury on Burton's public policy tort claim:  "Do you find from a preponderance of the evidence that plaintiff would not have been terminated except for his refusal to commit perjury?" *See* Doc. 286 at p. 17.  The jury, of course, found that Zwicker did terminate Burton's employment because Burton refused to commit perjury.  *See* Doc. 336 at pp. 89-90.

Zwicker argues that no reasonable jury could have found that Zwicker terminated Burton for failing to commit perjury. *See* Doc. 346 at p. 32.  More specifically, Zwicker argues that since perjury requires an individual to make a knowingly false statement under oath and Burton did not testify that he was ever under oath in association with other litigation, there was no basis for the jury's finding of liability.[2]  *Id.*

---

[2] Zwicker also asserts that the Court should find as a matter of law that there was no causal nexus between Burton's refusal to commit perjury in late 2009 and his termination in May 2010.  *See* Doc. 346 at p. 33.  However, the jury made the factual determination that there was, in fact, a causal connection.  This Court finds no reason to disturb the jury's determination that there was sufficient evidence of a causal connection between Burton's refusal to commit perjury and his termination.  *See Ne. Health Mgmt., Inc. v. Cotton*, 56 S.W.3d 440, 447 (Ky. Ct. App. 2001) (finding that over a year between the plaintiff's refusal to commit perjury and her termination did not preclude a finding of a causal connection).

11

"Under Kentucky law, absent explicit legislative statements prohibiting the discharge, there are only two situations in which the reason for terminating an employee is so contrary to public policy as to be actionable: (1) where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment; and (2) when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Henry v. Delta Air Lines, Inc.*, No. 2:10-CV-00009-WOB, 2011 WL 3444089, at *12 (E.D. Ky. Aug. 8, 2011).

In *Ne. Health Mgmt., Inc. v. Cotton*, the Kentucky Court of Appeals upheld the jury's finding that the plaintiffs were terminated for refusing to commit perjury. 56 S.W.3d 440, 447 (Ky. Ct. App. 2001). In *Cotton*, the plaintiffs were pulled into their superior's office and asked to testify falsely in their superior's upcoming trial for shoplifting. *Id.* at 443. The plaintiffs refused and their superior began to treat them poorly. *Id.* at 443-44. Ultimately, the plaintiffs' work environment became unbearable and they resigned. *Id.* at 445.

Here, Burton testified that after he gave detrimental statements to Zwicker's outside counsel associated with Burton's former co-worker's litigation, he was pressured by Zwicker's management to change his statements. *See* Doc. 337 at p. 67-71.

12

Burton further testified that he refused to change his statements and he was treated poorly thereafter. *Id.*

While the Court in *Cotton* did not specifically address the argument made here by Zwicker, that Court upheld the plaintiffs' public policy tort claim where the plaintiffs were clearly never under oath nor were they actually called to testify at their superior's trial. 56 S.W.3d at 447.

Under Kentucky law, it is actionable for an employer to terminate an employee "where the alleged reason for the discharge of the employee was the failure or *refusal* to violate a law in the course of employment." *Henry*, 2011 WL 3444089, at *12 (emphasis added). The jury found that Burton's refusal to perjure himself in connection with his former co-worker's litigation was a motivating factor in Zwicker's termination of Burton. The fact that Burton was not ultimately called to testify and his co-worker's claims settled out of Court does not negate the jury's determination that Burton was terminated for his refusal to commit perjury in the future.

Accordingly, Zwicker's motion for judgment as a matter of law on this claim is denied.


**C. Zwicker's Motion for Remittitur and New Trial**

13

### 1. Motion for New Trial

"In determining whether to grant a new trial when the claim is that the verdict is against the weight of the evidence, a district court must compare and weigh the opposing evidence and it must set aside the verdict if it determines that the verdict is against the clear weight of the evidence." *Clay v. Ford Motor Co.*, 215 F.3d 663, 672 (6th Cir. 2000).

### a. Burton's KCRA Claims

In its motion for new trial, Zwicker again attacks the sufficiency of the evidence Burton presented on his claims of racial discrimination, racially hostile work environment, and retaliation. *See* Doc. 347 at pp. 19-31. However, a thorough review of the record establishes that the jury's verdict in favor of Burton was not against the clear weight of the evidence. Thus, Zwicker's motion for new trial on this basis is denied.

### b. Burton's Public Policy Tort Claim

In its motion for new trial, Zwicker makes the identical argument regarding Burton's public policy tort claim that it made in its motion for judgment as a matter of law. For the same reasons outlined above, Zwicker's motion for new trial on this basis is denied.

### c. Unfair Prejudice to Zwicker

Further, Zwicker asserts that it should be entitled to a new trial because "the trial was unfair to Zwicker in several prejudicial respects." *See* Doc. 347 at pp. 33-40.

First, Zwicker asserts that it was unfairly prejudiced because the Court would not allow the testimony of Tara Green, the daughter of Zwicker's former Human Resources Director Sharon Martin. *Id.* at 33-34. Zwicker asserts that Ms. Green was prepared to testify that her mother did not harbor any racial animus to rebut the extensive testimony about Martin's racist attitude. *Id.*

At trial, the Court denied Zwicker's request to have Ms. Green testify, finding that, pursuant to FRE 403, Ms. Green's testimony would be more prejudicial than probative since Ms. Green had no knowledge of her mother's attitude in the Zwicker workplace. *See* Doc. 335 at pp. 183-84. In response, Zwicker relies on *Boykin v. Hamilton Cnty. Bd. of Educ.*, 869 F.2d 1488 (6th Cir. 1989). *Id.* In *Boykin*, the Court stated, "Whether the [defendants] possessed discriminatory intent was an issue in the trial and a proper subject for testimony." *Id.* at *3.

While Sharon Martin's discriminatory intent was an issue in the trial, the Court's holding in *Boykin* does not change the fact that Ms. Green's testimony regarding her mother's lack of a

15

racial animus outside Zwicker's workplace would lack sufficient probative value regarding how Martin conducted herself at work.

Accordingly, Zwicker's motion for a new trial on this basis is denied.

Second, Zwicker asserts that it was unduly prejudiced by the introduction of a statement made by Sharon Martin to Gretta Hoffman that Zwicker was going to fire Burton's "black ass" and Zwicker was going to let Burton "hang himself." *See* Doc. 335 at p. 35. Zwicker argues that the Court's failure to give an adverse inference instruction was prejudicial because Burton's counsel stated in his opening argument that Gretta Hoffman would testify regarding Sharon Martin's statements, but then Burton did not call Gretta Hoffman as a witness. *Id.*

However, as pointed out by Burton, the statements made by Sharon Martin to Gretta Hoffman were admitted because Zwicker decided to question Burton about an affidavit containing them. *See* Doc. 337 at pp. 146-47. On redirect examination, Burton's counsel questioned Burton about those alleged statements and the Court held that Burton's testimony was admissible because Zwicker's counsel had opened the door to that testimony. *Id.* at pp. 167-68.

Therefore, in light of Zwicker's counsel opening the door to those statements, Burton's failure to call Gretta Hoffman

16

regarding those same statements made by Sharon Martin was not unduly prejudicial to Zwicker.

Thus, Zwicker's motion for a new trial on this basis is denied.

Next, Zwicker argues that it was unduly prejudiced by the "admission of irrelevant 'me too' evidence." *See* Doc. 347 at pp. 35-37.  On this point, Zwicker argues that "Burton's case in chief was [] inundated with irrelevant, unfairly prejudicial evidence regarding alleged acts of discrimination which were unknown to Burton during his employment." *Id*. at p. 36.

However, after a thorough review of the record, the Court concludes that Zwicker was not unduly prejudiced by any such evidence.  In fact, a plaintiff prosecuting a hostile work environment claim must "prove that [his] employer 'tolerated or condoned the situation' or 'that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action.'" *Jackson v. Quantex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999) (quoting *Davis v. Monstanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988)).  Additionally, "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor can impact the work environment." *Id*. at 661 (citations omitted).

17

Thus, finding that Zwicker was not unduly prejudiced by irrelevant "me too" evidence, Zwicker's motion for a new trial on this basis is denied.

Further, Zwicker argues that "improper statements in Burton's counsel's closing argument warrant a new trial." *See* Doc. 347 at pp. 37-39.  More specifically, Zwicker argues that "Burton's counsel's closing argument was improperly designed to appeal to prejudice against out-of-state corporations and pandering to the perception that corporations wield disparate power over individuals." *Id.* at 38.

"Although there was an 'us-against-the-powerful-corporation' flavor to Plaintiff's closing remarks, [] those remarks were not so prejudicial as to mandate a new trial, especially where no objection was raised at [] trial." *Strickland v. Owens Corning*, 142 F.3d 353, 359 (6th Cir. 1998).

Additionally, any prejudice that may have resulted from these statements was cured by the Court's admonition prior to closing arguments that the jury should not consider the arguments of counsel as evidence.  *See* Doc. 336 at p. 22; *see also Farly v. Country Coach, Inc.*, 403 F. App'x 973, 981-82 (6th Cir. 2010) (finding that the district court did not abuse its discretion when it ruled that any prejudice resulting from the remarks of counsel was cured by the district court's clear instructions to the jurors that they were to decide the case

18

based on the testimony and evidence, and that the arguments of counsel are not evidence they could consider).

Thus, Zwicker's motion for a new trial on this basis is denied.

Lastly, Zwicker asserts that it was prejudiced because, prior to trial, Burton "failed to provide any meaningful detail as to the anticipated testimony of his supposed 37 witnesses." *See* Doc. 347 at pp. 39-40.  However, prior to trial, Burton reduced his witness list to sixteen witnesses.  *See* Doc. 300 at p. 2.  Additionally, the Court addressed Zwicker's argument pertaining to the sufficiency of Burton's pretrial witness disclosures and found them to be adequate.  *Id*. at pp. 16-17. Moreover, the Court ruled that the witnesses were limited to testifying as to what was included in their witness disclosures or, if the witness had given a deposition or submitted an affidavit, the witness could testify as to what was included in their deposition or affidavit.  *Id*. at 37-38.

Therefore, finding no prejudice to Zwicker, Zwicker's motion for new trial on this basis is also denied.

### 2. Motion for Remittitur

"A district court properly denies a motion for remittitur unless the jury award '*clearly* exceeds the amount which . . . was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss.'" *Fischer v. United*

*Parcel Serv., Inc.*, 390 F. App'x 465, 472 (6th Cir. 2010)
(quoting *Roush,* 10 F.3d at 397). "To qualify for reduction, the
award must be (1) beyond the range supportable by proof; (2) so
excessive as to shock the conscience of the court; or (3) the
result of a mistake." *Id.* (citing *Leila Hosp. & Health Ctr. v.
Xonics Med. Sys., Inc.,* 948 F.2d 271, 278 (6th Cir. 1991)).

### a. Back-Pay

Here, Zwicker asserts that the jury's $300,000 award of
back-pay is beyond the range of supportable proof because Burton
did not offer any evidence regarding what he earned after he was
terminated from Zwicker's employ. *See* Doc. 347 at pp. 4-7. In
response, Burton admits that he did not offer any evidence of
what he earned after he was terminated, but he asserts that it
was Zwicker's burden to offer evidence of any amounts that would
offset Burton's back-pay damages. *See* Doc. 359 at pp. 4-5.

At trial, Burton was able to establish through his
testimony and his W-2 tax form that he had made $46,360 in the
five months prior to his termination. *See* Doc. 337 at p. 100.
Thus, projecting Burton's 2010 earnings over a year, Burton
would have earned approximately $111,000.[3] Since Burton's trial
was approximately three (3) years after he was terminated,
Burton's lost earnings – without considering a reduction of what

---

[3] $46,360/5 months = $9272 * 12 months = $111,264.

Burton earned in the interim – would have been approximately $333,000.

The jury awarded Burton $300,000 in lost wages.  *See* Doc. 336 at p. 90.  Without considering what Burton earned between his termination and his judgment, the jury's award of $300,000 was certainly within the range of supportable proof.  Thus, the entire issue of remittitur comes down to whose burden of proof it was to present evidence of how much Burton's back-pay damages should be lessened by Burton's interim earnings.

While Zwicker is correct that a plaintiff has the burden of proving his damages and mitigating his damages, the Sixth Circuit is clear that "once it is established that a duty to mitigate is present, the burden nevertheless falls on the wrongdoer to show that the damages were lessened or might have been lessened by the plaintiff." *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 593 (6th Cir. 1986) (citation omitted); *see also Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 426 (6th Cir. 1999); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994); *Jorling v. Habilitation Servs., Inc.*, No. CIV.A. 1:03-CV-00073-WOB, 2005 WL 1657060, at *4 (S.D. Ohio July 14, 2005).  Although "the jury must consider mitigation of damages when such evidence is presented, the jury has no obligation to create such figures out of thin air." *Jackson*, 31 F.3d at 1359.

21

Zwicker relies primarily on *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511 (6th Cir. 2009), for its argument that Burton bore the burden of proof to establish his earnings after his termination. *See* Doc. 357 at pp. 15-17.  While the *Hance* Court did remand the case to the District Court for fact-finding and a new damage award, it did so because the plaintiff offered "vague testimony on his income during [the] period" after his discharge.  571 F.3d at 521.

Despite the *Hance* Court's ultimate remand, it also stated that the plaintiff's testimony that he had worked full time after his termination was "legally sufficient to establish a *prima facie* case on the issue of damages. . . [, and] [t]he burden would then shift to the employer to show that a back-pay award should be reduced by the amount of interim earnings or that the plaintiff did not exercise due diligence in seeking substitute employment in mitigation of his damages."  *Id*. (citing *Rasimas v. Mich. Dept. of Mental Health*, 714 F.2d 614, 623-24 (6th Cir. 1983)).

Here, both sides agree that Burton testified to his subsequent employment, but no figures were entered into evidence regarding what Burton actually earned between his termination and the trial.  Additionally, there is no dispute that Zwicker was in possession of Burton's IRS form W-2s from 2010 and 2011 and Burton's pay stubs from 2012.

At trial, during a conference on the jury instructions, this issue arose and both parties argued that the other had the burden to establish what Burton earned between his termination and trial. *See* Doc. 301 at p. 81-83. Recognizing the conflict that had arisen, the Court offered to reopen the case to allow for evidence of Burton's interim earnings to be submitted. *See* Doc. 302 at p. 49. However, Zwicker's counsel strenuously objected, asserting that allowing the case to be reopened for this purpose would be "incredibly prejudicial" to her client. *Id*. at p. 49-50. Counsel thus waived any objection to the fact that the jury did not receive complete testimony of Burton's mitigation. The Court reiterates that it was Zwicker's obligation to present this evidence in the first place.

Ultimately, the Court did not reopen the evidence and submitted the case to the jury without any evidence of Burton's interim earnings. Since Zwicker failed to meet its burden and present evidence of Burton's interim earnings, the jury had no obligation to create such figures out of thin air. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 574 (8th Cir. 1982) ("Once the gross amount of back pay owed Mosley has been determined, the burden shifts to Union National Bank to prove what should be deducted from that award as interim earnings or amounts earnable with reasonable diligence."); *Denton v. Boilermakers Local 29*, 673 F. Supp. 37, 41 (D. Mass. 1987) ("Once the gross amount of

back pay owed plaintiff has been determined, the burden shifts to the defendant to prove what should be deducted therefrom as interim earnings or amounts earnable with reasonable diligence.") (citation and internal quotation omitted).

It is true that the purpose of a back pay award is to make the claimant whole, not better off.  *See Hance*, 571 F.3d at 521. However, "[b]ackpay should be awarded even where the precise amount of the award cannot be determined[, and] [a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer."  *Id*. at 520 (quoting *Rasimas*, 714 F.2d at 628).

Therefore, Zwicker's motion to remit Burton's recovery for back pay is denied.[4]

### b. Emotional Distress Damages

Zwicker also asserts that Burton's awards for emotional distress damages should be reduced to nominal damages because "[t]here was scant evidence that Burton suffered emotional distress at any time as a result of anything [Defendant] did."  *See* Doc. 347 at p. 8.

---

[4] Zwicker also argues for judgment as a matter of law on the issue of Burton's lost wages.  *See* Doc. 346 at pp. 23-27.  Zwicker's basis for this motion is the same as it argued in its motion for remittitur – that Burton carried the burden of establishing his interim earnings, and he failed to do so.  *Id*. However, as seen by the above analysis, the burden of proof was on Zwicker, not Burton. Since Zwicker failed to offer any evidence of Burton's interim earnings, the jury's award of $300,000 was within the range of supportable proof.

However, after a thorough review of the record, it cannot be said that the "jury award *clearly* exceeds the amount which . . . was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Fischer*, 390 F. App'x at 472 (citation and internal quotation omitted). Burton testified to specific instances throughout his employment and his termination of being scared, embarrassed, and humiliated. *See* Doc. 72, 102-03. Moreover, Burton testified that after he was terminated he was depressed and had thoughts of suicide. *Id*. at 102-03. Further, Burton testified that his relationship with his son was adversely affected due to the fact that Burton felt as if he could no longer provide for his son. *Id*. at 103.

Under Kentucky law, "[j]urors determine what fairly and adequately compensates a plaintiff under the evidence guided by their observation, experience and sense of fairness and right." *CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 71 (Ky. 2010). Using their observation, experience, and sense of fairness and right, this Court cannot find that the jury's emotional distress damage award "*clearly* exceeds the amount which . . . was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Fischer*, 390 F. App'x at 472 (citation and internal quotation omitted).

Thus, Zwicker's motion for remittitur of Burton's emotional distress damages is denied.

25

### c. Punitive Damages

At trial, the jury awarded Burton $600,000 in punitive damages in association with Zwicker's liability for Burton's public policy tort claim.  *See* Doc. 336 at pp. 90-91.

Zwicker asserts that Burton's $600,000 recovery for punitive damages was unconstitutional in light of the fact that Burton only recovered $50,000 in emotional distress damages on his public policy tort claim.  *See* Doc. 347 at p. 9.  It is undisputed that Burton could recover punitive damages only on his public policy tort claim and not on any of his other claims. Thus, Zwicker asserts, the 12:1 ratio of punitive damages to compensatory damages is unconstitutional and the punitive damages award is inconsistent with the guideposts set forth by the Supreme Court.  *Id*. at pp. 9-10.

However, Zwicker fails to account for the fact that the jury awarded Burton $300,000 in lost wages as a result of Burton's unlawful termination.  *See* Doc. 336 at p. 90.  Thus, Burton recovered a total of $350,000 in compensatory damages. Accordingly, the ratio of punitive damages to compensatory damages is actually 1.7:1, rather than 12:1.

Nonetheless, the Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003), advised that there is no "bright-line ratio which a punitive damages award cannot exceed."  *Id*. at 425.

26

Rather, in reviewing punitive damage awards, the Court should "consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418 (citing *BMW of N. Am., Inc., v. Gore*, 517 U.S. 559, 575 (1996)); *see also Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 441 (6th Cir. 2009) (citations omitted).

### i. Reprehensibility

Generally, the most important "guidepost" when determining the reasonableness of a punitive damage award is the reprehensibility of the defendant's conduct. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

The reprehensibility of a defendant's conduct is measured by considering whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419 (citation omitted).

27

Despite Burton's assertion, the tortious conduct in this case was not physical nor did it demonstrate an indifference to the health or safety of others.  Burton may have had physical manifestations of his emotional distress, but that does not make Zwicker's tortious conduct physical in nature.

Next, Burton also was not financially vulnerable.  While much is made of the lack of financial information offered about Burton at trial, Burton did offer evidence that he had made $46,360 in the first five (5) months of 2010.  *See* Doc. 337 at p. 100.

Although the jury found that Zwicker unlawfully terminated Burton's employment, it would be difficult to find someone making a six-figure salary to be financially vulnerable.  In his brief, Burton offers no evidence of financial vulnerability, but rather asserts that Zwicker used the high-paying nature of its employment as a threat toward Burton.  *See* Doc. 359 at p. 38. While offensive, this conduct does not specifically shed light on Burton's financial vulnerability at the time of his termination.

Next, "[t]he repeated conduct factor 'require[s] that the similar reprehensible conduct be committed against various different parties rather than repeated reprehensible acts within the single transaction with the plaintiff.'" *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 487 (6th Cir. 2007)

28

(quoting *Chicago Title Ins. Corp. v. Magnuson,* 487 F.3d 985, 1000 (6th Cir. 2007)) (additional citation and internal quotation omitted).  Burton testified that he was brought before Zwicker's outside counsel three to five times in connection with his former co-worker's lawsuit, but this constitutes "repeated reprehensible acts within the single transaction with the plaintiff." *Id; see also* Doc. 337 at p. 68.  There is no record evidence that Zwicker pressured other employees to perjure themselves in litigation involving Zwicker.

Although the first four reprehensibility factors do not favor Burton, the remaining factor does favor Burton.  The jury ultimately found that Burton had been terminated by Zwicker because Burton refused to commit perjury.  Doc. 336 at p. 89-90.  Such conduct could not be considered accidental, but, rather, could only be borne out of intentional malice toward Burton.

Although Zwicker's conduct is particularly egregious, Sixth Circuit precedent generally favors a reduction in punitive damages where only one of the reprehensibility factors is present.  *See Bridgeport*, 507 F.3d at 488 ("In this case where only one of the reprehensibility factors is present, a ratio in the range of 1:1 to 2:1 is all that due process will allow.")

## ii. Ratio

The second "guidepost" outlined above requires the Court to consider the ratio of compensatory damages to punitive damages.

*See Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 645 (6th Cir. 2005) (citation omitted).

In *State Farm,* the Supreme Court "decline[d] [] to impose a bright-line ratio which a punitive damages award cannot exceed," but noted that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." 538 U.S. at 425. The Supreme Court also stated that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," but again stated that "there are no rigid benchmarks that a punitive damages award may not surpass." *Id.*

Further discussing the issue, the Supreme Court stated that "ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages," but "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* (citations and internal quotations omitted).

Here, Burton recovered $350,000 in compensatory damages for his public policy tort claim and $600,000 in punitive damages for that claim. Doc. 336 at p. 90-91. While Zwicker's actions could be considered "particularly egregious," Burton's $350,000

30

compensatory damage award is "substantial" rather than a "small amount of economic damages." *See State Farm*, 538 U.S. at 425.

In fact, a number of Sixth Circuit cases have found that a 1:1 ratio of compensatory damages to punitive damages is appropriate where the plaintiff's compensatory damages are of a similar range seen in the case at bar.  In *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470 (6th Cir. 2007), the Sixth Circuit held that, "[g]iven the large compensatory damages award of $366,939, a substantial portion of which contained a punitive element, and the low level of reprehensibility of defendants' conduct, a ratio of closer to 1:1 or 2:1 is all that due process can tolerate in this case." *Id*. at 490.  Similarly in *Bach v. First Union Nat. Bank*, 486 F.3d 150 (6th Cir. 2007), the Sixth Circuit found that, where there was only one reprehensibility factor present and the plaintiff had recovered $400,000 in compensatory damages, a 1:1 ratio of compensatory to punitive damages was "the outer boundary of what the Constitution will permit." *Id*. at 156-57.

Further, in *State Farm*, the Supreme Court found the punitive damage award to be unconstitutionally excessive, in part, because the plaintiff's award of compensatory damages was almost strictly based the plaintiff's emotional injury. *Id*. at 426.  There, the Supreme Court found that the punitive damages were somewhat duplicative of the compensatory damages because

31

the major purpose of punitive damages was to condemn the conduct which ultimately caused the plaintiff's emotional distress. *Id*.

Here, $50,000 of Burton's compensatory damages was for emotional distress damages. *See* Doc. 336 at p. 90.  Thus, similar to the plaintiff in *State Farm*, $50,000 of Burton's punitive damage award was to some degree duplicative of Burton's recovery for emotional distress damages.

Accordingly, finding Burton's compensatory damage award substantial, this guidepost also weighs in favor of remitting Burton's punitive damage award.  The Court also notes that Burton achieved a substantial windfall from Zwicker's failure to introduce evidence of Burton's interim earnings.

### iii. Comparable Cases

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Gore*, 517 U.S. at 583.  "The purpose of this guidepost reflects an elementary principle of due process – namely, that the defendant must have been provided 'fair notice' that its conduct would subject it to a penalty on the order of the punitive damages award." *Romanski*, 428 F.3d at 648 (citations omitted).

While the parties do not address whether Zwicker's conduct would have exposed it to any civil or criminal penalties under Kentucky law, the Court is confident that a defendant law firm

32

would be on notice that terminating an employee for refusing to commit perjury would expose it to an award of punitive damages.

Additionally, there is sufficient case law in Kentucky and the Sixth Circuit where employers have been subjected to punitive damage awards for unlawful termination and, more specifically, for terminating an employee who refused to commit perjury. *See Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 443 (6th Cir. 2009) (finding that plaintiff is entitled to a $6,000,000 punitive damage award as a result of defendant's termination of plaintiff on the basis of plaintiff's age); *see also Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 431 (Ky. 2010) (upholding a punitive damage award given to the plaintiff, in part, because she was terminated for refusing to commit perjury at an unemployment hearing); *Cotton*, 56 S.W.3d at 449-50 (upholding the plaintiff's punitive damage award where the jury found that the plaintiff was terminated for refusing to commit perjury).

Therefore, while Zwicker would undoubtedly have been aware that its egregious conduct in terminating Burton because of his refusal to commit perjury would subject Zwicker to an award of punitive damages, the factors outlined above under *State Farm* militate toward a reduction in Burton's punitive damage award.

Accordingly, since only one reprehensibility factor was present in the case at bar and Burton recovered a substantial

33

compensatory damage award, Burton's award of punitive damages
will be reduced to $350,000 – a 1:1 ratio of compensatory
damages to punitive damages. *See State Farm*, 538 U.S. at 425
("When compensatory damages are substantial, then a lesser
ratio, perhaps only equal to compensatory damages, can reach the
outermost limit of the due process guarantee."); *see also
Bridgeport*, 507 F.3d at 488 ("In this case where only one of the
reprehensibility factors is present, a ratio in the range of 1:1
to 2:1 is all that due process will allow.")

### D. Zwicker's Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(3)

Lastly, after trial, Zwicker filed a motion for relief from
judgment pursuant to Fed. R. Civ. P. 60(b)(3). *See* Doc. 348-1.
In this motion, Zwicker requests relief from the portion of
Burton's judgment that relates to Zwicker's liability for
violating public policy and Burton's award of punitive damages
for that violation. *Id*. at p. 1.

More specifically, Zwicker requests this Court to dismiss
Burton's public policy tort claim and the punitive damage award
because Burton committed a fraud on this Court by falsely
testifying that he had been pressured to commit perjury. *Id*. at
p. 8. Zwicker supports this motion with three affidavits from
the outside counsel who interviewed Burton in the prior lawsuit
wherein they deny that Burton was ever badgered or berated into

altering his testimony to be more favorable to Zwicker.  *Id*. at pp. 4-6.

"[A] 60(b)(3) motion may be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that, without it, a jury might have reached a different conclusion; that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial." *Abrahamsen v. Trans-state Express, Inc*., 92 F.3d 425, 428 (6th Cir. 1996) (citations and internal quotations omitted).

First, Zwicker asserts that its Rule 60(b)(3) motion should be granted because it could not have foreseen Burton's testimony at trial.  *See* Doc. 367 at pp. 4-5.  However, that assertion is belied by Burton's pretrial submissions and the testimony of Zwicker's own General Counsel at trial.

In Burton's answers to interrogatories submitted on March 28, 2011, Burton stated, "After Plaintiff did not give Zwicker information to use against the employees who were suing Zwicker, Plaintiff noticed he was being singled out and harassed more and more." *See* Doc. 348-1 at p. 6.

In Burton's November 29, 2011 affidavit, he stated, "The attorneys for Zwicker called me in multiple times badgering, asking harassing questions regarding the character of the women that had sued, including whether I had, in fact, slept with

35

them.  I told the truth, denied I slept with any of them, but was later told that upper management felt I lied." *Id*. at p. 4.

Moreover, in Burton's response to Zwicker's motion for summary judgment, he stated that a basis for his public policy tort claim was that he was terminated for his "refusal to be badgered and coerced into giving false testimony in the case of *Wilson, et al.* v. *Zwicker & Assoc*." *See* Doc. 241 at p. 35.

At trial, Zwicker's General Counsel, Robert Thuotte, testified that he was "quite sure that Mr. Burton was not asked to testify falsely by company lawyers because Mr. Burton was interviewed by a highly regarded partner at a prominent Cincinnati law firm." *See* Doc. 338 at p. 53.  Mr. Thuotte further testified, "So a prestigious lawyer, a fellow member of your Cincinnati bar, conducted those interviews, and I am very sure that Mr. Burton was not asked to lie about anything." *Id*.

While Burton may not have specifically stated that Zwicker had pressured him to commit perjury, his pretrial statements demonstrate Burton's assertion that he had given truthful statements to Zwicker's outside counsel that were detrimental to Zwicker and Zwicker then undertook actions to influence Burton to change those statements.

Thus, Zwicker cannot establish that it could not have foreseen Burton's trial testimony. *See, e.g., GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 372 (6th Cir. 2007) ("Most of the

36

grounds for relief relate to, if not require, new information
about the case that could not reasonably have been discovered
earlier.")

Alternatively, Zwicker argues that "[e]ven if Zwicker could
have or should have foreseen the unexpected, the absence of
rebuttal evidence at trial does not justify and excuse Burton's
fraud upon the Court." *See* Doc. 367 at p. 5.  However, this
Court is not "reasonably well satisfied that the testimony given
by [Burton was] false." *See Abrahamson*, 92 F.3d at 428.  "A
party moving for relief under Rule 60(b)(3) must establish the
alleged fraud or misrepresentation by clear and convincing
evidence." *Young v. Olympus Am., Inc.*, No. 07-2547-STA, 2013 WL
1103701, at *4 (W.D. Tenn. Mar. 15, 2013) (citations omitted).

Here, Zwicker's sole basis for asserting that Burton
testified falsely is three affidavits submitted by Zwicker's
outside counsel who interviewed Burton.  *See* Doc. 348-1 at pp.
4-6.  These affidavits simply endeavor to refute the trial
testimony given by Burton.  Zwicker's motion for relief from
judgment under Rule 60(b)(3) is not the appropriate vehicle to
challenge the truthfulness of Burton's trial testimony in light
of the fact that they could have called these witnesses to
testify in rebuttal at trial.  *See Hopper v. Euclid Manor
Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989) ("The
parties may not use a Rule 60(b) motion as a substitute for an

appeal or as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise.") (citations omitted).

Moreover, Zwicker presents no evidence beyond the submission of statements by these three affiants who say that Burton was not truthful at trial.  Without more, this Court cannot find by clear and convincing evidence that Burton committed a fraud upon this Court.

Finally, Burton testified that it was the management at Zwicker that pressured him to change his statements and retaliated against him for refusing to do so, not the outside counsel that interviewed him.

Therefore, Zwicker's motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3) is denied.


Therefore, the Court being advised and pursuant to the foregoing analysis,

**IT IS ORDERED THAT:**

1. Plaintiff's motion for reinstatement and interim front pay (Doc. #292) be, and is hereby, **DENIED;**

2. Defendant's motion for judgment as a matter of law (Doc. #316) be, and is hereby, **DENIED;**

3. Defendant's motion for new trial and remittitur (Doc. #317) be, and is hereby, **GRANTED in part** and **DENIED in part;**

4. Defendant's motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3) (Doc. #348) be, and is hereby, **DENIED;**

5. Plaintiff's motion to strike defendant's reply brief (Doc. #370) be, and is hereby, **DENIED;**

6. The existing judgment against the defendant Zwicker and Associates, PSC, (Doc. #287) is hereby **set aside and held for naught;**

7. The Clerk is hereby ordered to **enter an amended judgment reflecting a judgment in favor of the plaintiff Clinton Burton in the amount of seven hundred and fifty thousand dollars ($750,000.00) against the defendant Zwicker and Associates, PSC, which includes post judgment interest in the amount of .12% per annum, along with costs;**

8. Defendant's motion for stay of execution of judgment pending the filing and disposition of post-trial motions and pending appeal (Doc. #298) be, and is hereby, **DENIED as moot;** and

9. Defendant shall promptly re-file any motion for stay of execution of judgment **upon the Clerk's entry of the amended judgment;** and

39

10.  Plaintiff shall file a response, if any, to

Defendant's motion for stay of execution of judgment

within **fourteen (14) days of that motion**.


This 16th day of October, 2013.



Signed By:

*William O. Bertelsman*  WOB

**United States District Judge**